11-1740-cv
Davidson v. City of Bridgeport

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of June, two thousand twelve.

PRESENT:  PIERRE N. LEVAL,
                REENA RAGGI,
                DENNY CHIN,
                      *Circuit Judges.*

--------------------------------------------------------------------------------

BOBBY DAVIDSON,

                 *Plaintiff-Appellant*,

        v.                                    No. 11-1740-cv

CITY OF BRIDGEPORT, MARK RUBINSTEIN, M.D., CITY OF BRIDGEPORT POLICE DEPARTMENT, BRYAN T. NORWOOD,

                 *Defendants-Appellees*.[*]

--------------------------------------------------------------------------------

FOR APPELLANT:       JOHN T. BOCHANIS, Daly, Weihing & Bochanis, Bridgeport, Connecticut.

FOR APPELLEES:       EROLL V. SKYERS, Esq., Bridgeport, Connecticut, *for* City of Bridgeport, City of Bridgeport Police Department, and Bryan T. Norwood.

                            JAMES F. BIONDO, Rosenblum Newfield, LLC, Stamford, Connecticut, *for* Mark Rubinstein, M.D.

---

[*] The Clerk of Court shall amend the caption as shown above.

Appeal from a judgment of the United States District Court for the District of Connecticut (Alvin W. Thompson, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 31, 2011, is AFFIRMED.

Former police sergeant Bobby Davidson appeals from the award of summary judgment: (1) to the City of Bridgeport, the city's police department, and Police Chief Bryan T. Norwood (collectively, the "City") on federal law claims relating to the City's decision to retire involuntarily Davidson from his employment; and (2) to psychiatrist Mark Rubinstein on a state law claim relating to Rubinstein's disclosure to the City of Davidson's psychological independent medical examination ("IME"). We review an award of summary judgment <u>de novo</u>, resolving all ambiguities and drawing all inferences in favor of the non-movant, and we will affirm only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Nagle v. Marron</u>, 663 F.3d 100, 104–05 (2d Cir. 2011). We assume the parties' familiarity with the underlying facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.     <u>42 U.S.C. § 1983 Claims Against the City</u>

    a.     <u>Invasion of Privacy</u>

Davidson challenges the district court's determination that there were no genuine disputed issues of fact regarding his substantive due process and Fourth Amendment claims that the City invaded his privacy by subjecting him to a psychological IME. Davidson faults the district court for overlooking the following facts establishing his objective expectation

2

of privacy: (1) the City regulations did not authorize the IME; (2) the City failed to put forward any justification for a psychological IME when Davidson had been absent because of physical injuries; and (3) Davidson understood that the IME information would remain confidential. The argument overlooks the critical defect in Davidson's privacy-based claims: on the evidence adduced, a jury could not conclude that the City's request that Davidson undergo a psychological IME was either arbitrary or unreasonable.

### (1)    Substantive Due Process

Personal medical information is protected by substantive due process. See O'Connor v. Pierson, 426 F.3d 187, 201 (2d Cir. 2005). Nevertheless, "[w]here a government employer has reason to question whether an employee is medically fit to work, the employer may direct the employee to undergo a medical examination," provided that there is a sufficient governmental interest to warrant the request. Id. at 202; see Strong v. Bd. of Educ., 902 F.2d 208, 212–13 (2d Cir. 1990) ("Legitimate requests for medical information by those responsible for the health of the community do not rise to an impermissible invasion of privacy."). Here, both the government's interest and its reason to question Davidson's mental fitness for duty are evident. Police Chief Norwood's own observations of Davidson's conduct at a disciplinary proceeding made him question Davidson's mental fitness. Indeed, Norwood's concern was confirmed by Rubinstein, who, after performing the IME, concluded that Davidson suffered from a delusional disorder that rendered him unfit for duty.

In any event, Davidson's burden in claiming a violation of substantive due process was to show that the IME request was "arbitrary in the constitutional sense," i.e., egregious

3

and conscience-shocking. O'Connor v. Pierson, 426 F.3d at 203 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)). Davidson cannot satisfy that standard simply by disputing whether he exhibited symptoms of paranoia at the disciplinary proceeding, or whether the Bridgeport Police Department's personnel manual authorized the psychological IME. Rather, he needed to show that the City engaged in deliberate malfeasance. See id. (stating that, to survive summary judgment on substantive due process claim, plaintiff must point to record evidence that defendants "intended to injure or to spite" him by insisting on broad release for disclosure of personal medical information). Because the record is devoid of any such evidence, the City was entitled to summary judgment on Davidson's substantive due process claim.

(2)    Fourth Amendment

Davidson also claims that the IME constituted an unreasonable search. The district court reasoned that Davidson waived this Fourth Amendment argument by agreeing to be examined despite being warned that Rubinstein's report would be shared with Norwood and the Bridgeport Police Department. We need not here decide whether this conclusion is undermined by evidence suggesting that Davidson's participation in the IME was compulsory, not voluntary. We affirm summary judgment in any event because there is no genuine issue of material fact as to the reasonableness of the City's IME request. See Carpenter v. Republic of Chile, 610 F.3d 776, 781 n.6 (2d Cir. 2010) ("[W]e may affirm the judgment of the District Court on any ground that the record supports.").

4

The IME was ordered in the context of the police department's employment of Davidson, i.e., to determine whether he was fit for duty, and not in the context of an investigation of a crime or some other law enforcement objective. For that reason, we review the compulsory IME as a "special needs" search. See Lynch v. City of New York, 589 F.3d 94, 102 (2d Cir. 2009) ("[T]he special needs doctrine applies to any program of searches whose 'primary purpose' is a government interest other than crime control." (citing City of Indianapolis v. Edmond, 531 U.S. 32, 46–48 (2000))). Under that doctrine, we "balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." National Treasury Emps. Union v. Von Raab, 489 U.S. 656, 665–66 (1989); accord United States v. Lifshitz, 369 F.3d 173, 184–85 (2d Cir. 2004). Specifically, we weigh: (1) the nature of the individual privacy interest; (2) the character and degree of the governmental intrusion; and (3) the nature and immediacy of the government's needs, as well as the effectiveness of the search in addressing them, in determining whether the search was reasonable under the Fourth Amendment. See United States v. Amerson, 483 F.3d 73, 83–84 (2d Cir. 2007).

On this record, no genuine issue of material fact exists as to any of these factors, and a fact-finder could only conclude that the search was reasonable. Davidson's privacy interest in personal medical information is diminished to the extent that physical and mental fitness are essential to his work as an armed law enforcement officer. See National Treasury Emps. Union v. Von Raab, 489 U.S. at 672; Lynch v. City of New York, 589 F.3d at 103. The

5

character and degree of the governmental intrusion were limited as well, insofar as (1) an independent psychiatrist performed the IME and only presented the Department with his findings and opinion, see generally O'Connor v. Pierson, 426 F.3d at 202 (distinguishing, for purposes of substantive due process, between lesser justification needed to compel IME and greater justification needed to review employee's medical records to verify IME's conclusions); (2) the police department personnel manual put Davidson on notice that Norwood was authorized to order an employee on the "extended sick/injured list . . . to submit to a physical examination," J.A. 89; and (3) the IME was ordered only after Norwood suspected, based on his own personal observations, that Davidson might be mentally unfit for duty. These factors indicate that the search was not arbitrarily or randomly performed. Finally, it is undisputed that a police department has an overriding interest in ensuring the physical and mental fitness of its officers as a matter of maintaining public safety and the department's public reputation. See id. at 104.

In sum, the City of Bridgeport's interest in conducting the IME, based on Norwood's suspicion that Davidson was experiencing psychological difficulties, outweighed Davidson's reduced interest in the privacy of personal medical information relevant to the performance of his duty. Accordingly, we affirm the summary judgment award on Davidson's Fourth Amendment claim.

b. Procedural Due Process

Davidson submits that his procedural due process rights were violated because he was not afforded notice and an opportunity to be heard before the City involuntarily retired him.

6

See, e.g., Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001). This claim is belied by uncontradicted evidence in the record. Davidson was informed by letter dated October 6, 2006, of Norwood's intent to recommend involuntary retirement to the Board of Police Commissioners at its October 17, 2006 meeting. The letter stated that Davidson's "presence [was] encouraged, but not mandatory," and that he could be represented by counsel or by a union representative during the hearing. J.A. 61. Although the hearing was eventually held on November 28, 2006, Davidson does not contend that he was not informed of the date change. Instead, he argues that the Board of Police Commissioners meeting was not a legitimate hearing because Norwood had already decided that Davidson would be retired involuntarily. The uncontradicted evidence in the record, however, plainly shows that, on November 28, 2006, the Board of Police Commissioners held a hearing during which its members voted on Norwood's request that Davidson be retired involuntarily, and that Davidson's retirement became final only after the Board's vote.

To the extent Davidson posits that he received no notice or opportunity to be heard before Norwood ordered that he undergo the IME, the record indicates otherwise: Davidson was informed of the first scheduled IME on June 2, 2006, and, after refusing to participate in the examination and retaining counsel to complain to his superiors, Davidson received a second notice on June 23, 2006, to which his attorney again responded.

Thus, because none of Davidson's procedural due process challenges is supported by the record, the City was entitled to summary judgment.

7

c.	Remaining Federal Claims

Davidson's equal protection claim fails because he points to no record evidence showing that the City involuntarily retired him for impermissible reasons, such as race or religion. See Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 166 (2d Cir. 2001). Further, to the extent that Davidson asserts a "class of one" theory that his involuntary retirement was "irrational and wholly arbitrary," we previously have held that, under Engquist v. Or. Dep't of Agric., 553 U.S. 591, 605–09 (2008), public employees are prohibited from raising such class-of-one claims against their employers. See Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008).

Davidson's Eighth Amendment claim also fails because the IME was not a form of punishment. See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) ("The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments,' . . . including the unnecessary and wanton infliction of pain." (quoting U.S. Const. amend. VIII)).

2.	State Claim Against Rubinstein

Davidson challenges the award of summary judgment on his state law claim against Rubinstein for disclosing the IME to Norwood and the Bridgeport Police Department without Davidson's written consent. See Conn. Gen. Stat. § 52-146e(a) (prohibiting psychiatrist from "disclos[ing] or transmit[ting] any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative"); id. § 52-146d(3) (defining "consent" as "consent given in writing by the patient"); id. § 52-146j(b) (providing

8

for private right of action for damages against psychiatrist who violates these confidentiality provisions). Davidson argues that there is a genuine issue of material fact whether the disclosure qualified as "'communications and records' . . . relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist," id. § 52-146d(2) (emphasis added), insofar as Rubinstein performed an examination to "diagnose" any psychological limitation that rendered Davidson unfit for duty. Davidson also contends that he was a "patient" within the meaning of Connecticut law because he "communicate[d] with . . . a psychiatrist in diagnosis." Id. § 52-146d(6).

Davidson reads the statute too broadly. The Connecticut Supreme Court has ruled that Conn. Gen. Stat. §§ 52-146d and 52-146e must be read in light of the underlying purpose of the psychiatrist-patient privilege, i.e., the need "to safeguard confidential communications or records of a patient seeking diagnosis and treatment . . . so as to protect the therapeutic relationship." State v. Montgomery, 254 Conn. 694, 724 (2000) (internal quotation marks, brackets, and citation omitted; emphasis added). Thus, it is "axiomatic that communications that bear no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute and are admissible under the normal rules of evidence." Id. (internal quotation marks and brackets omitted); see also Falco v. Inst. of Living, 254 Conn. 321, 328–29 (2000) (holding that patient-identifying information could not be disclosed because "[t]he confidentiality of a patient's identity is as essential to the statutory purpose of preserving the therapeutic relationship as the confidentiality of any other information in a patient's communications and records" (emphasis added)). Here, there is no genuine issue

9

that Davidson visited Rubinstein only because he was mandated to do so by the City to determine his fitness for duty. There is no evidence that Davidson was examined by Rubinstein for therapeutic reasons. Indeed, Davidson was notified in writing when he attended the IME that he was "not a patient of [Rubinstein]" and that the examination was being performed "for the purpose of evaluating [Davidson's] present medical condition(s)," and was "not intended to be understood to be for the purpose of any medical treatment or diagnosis." Supp. J.A. 61a, 65a.

In sum, Rubinstein may have examined Davidson in order to provide the Bridgeport Police Department with a diagnosis, but no record evidence indicates that he did so in the context of a therapeutic relationship with Davidson. Thus, the district court properly awarded summary judgment to Rubinstein on this claim.

3. Conclusion

We have considered Davidson's remaining arguments and conclude that they are without merit. The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

10