******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

*Syllabus*

The plaintiff, a former Bridgeport police officer, sought to recover damages from the defendants, the city of Bridgeport, the Bridgeport Police Department, and N, a former Bridgeport chief of police, for an alleged violation of his right to privacy and negligent and intentional infliction of emotional distress. The plaintiff, who was the subject of an internal disciplinary proceeding, had attended a meeting with N, who observed the plaintiff launch into an outburst regarding alleged unjust treatment by the department's internal affairs division. Following the meeting, N requested the department's workers' compensation carrier to schedule the plaintiff, who was on disability leave for work related injuries, for a psychiatric independent medical examination. The plaintiff had received a notice instructing him to bring certain medical records related to his injury to the examination and was under the impression that he was to undergo a physical examination. When he reported for the examination and learned it was psychiatric in nature, he left before being examined but eventually underwent the psychiatric examination. A few months later, N requested that the Board of Police Commissioners afford the plaintiff a service related involuntary retirement, which the board granted. Thereafter, the plaintiff commenced the present action claiming, inter alia, that, by subjecting him to the psychiatric examination, the defendants invaded his privacy and that he was forced to retire based on an alleged psychiatric disability. Following a trial, the trial court rendered judgment in favor of the defendants, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly determined that the defendants did not violate the plaintiff's right to privacy; the record did not support the plaintiff's claim that the defendants released and disseminated the psychiatric evaluation of him, resulting in his involuntary termination from employment, as the trial court credited the testimony of two police officers that they never copied or disseminated the evaluation to anyone, and it was not for this court to disturb the trial court's credibility findings, there was substantial evidence in the record to support the court's finding that the plaintiff had been granted a service related, involuntary retirement on the basis of his physical disabilities, and the plaintiff failed to prove by a preponderance of the evidence that, by requiring him to undergo a psychiatric medical examination, the defendants unreasonably intruded on his seclusion and that the intrusion would have been offensive to a reasonable person, as the record supported the court's findings that N had sent the plaintiff for the examination out of concern for his welfare and to determine his fitness for duty, that the plaintiff's alleged emotional injury was the result of the internal affairs investigation, that N had the authority to refer the plaintiff for a psychiatric independent medical examination due to a concern for the plaintiff's well-being, and that the plaintiff had presented no credible evidence that the defendants had an improper intent to invade his privacy.

2. The plaintiff could not prevail on his claim that the trial court improperly concluded that the defendants did not negligently or intentionally cause him emotional distress; the record contained no evidence that the defendants intended to inflict emotional distress on the plaintiff or that emotional distress was the likely result of sending him for a psychiatric examination, the trial court found that the plaintiff's emotional distress was not caused by his going to the psychiatrist's office for the examination and that the plaintiff had been suffering emotional distress long before he had been ordered to undergo the psychiatric examination, as he was distressed by, and obsessed with, the outcome of the internal affairs investigation, and there was no evidence that, by requiring the plaintiff to undergo the psychiatric examination, the defendants created an unreasonable risk of emotional distress that resulted in illness or

bodily harm.

Argued September 19, 2017—officially released March 6, 2018

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged violation of the plaintiff's right to privacy, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the matter was removed to the United States District Court for the District of Connecticut, *Thompson, J.*, which granted in part the defendant Mark Rubinstein's motion for summary judgment and remanded the matter to the Superior Court on the remaining state law claims; thereafter, the plaintiff withdrew the matter as to the defendant Mark Rubinstein; subsequently, the matter was tried to the court, *Hon. Richard P. Gilardi,* judge trial referee; judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed.*

*John T. Bochanis*, for the appellant (plaintiff).

*Eroll V. Skyers*, assistant city attorney, for the appellee (defendants).

*Opinion*

LAVINE, J. The plaintiff, Bobby Davidson, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants, the city of Bridgeport (city), the Bridgeport Police Department (department), and Bryan T. Norwood, former Bridgeport chief of police.[1] On appeal, the plaintiff claims that the court improperly found that the defendants did not (1) violate his state right to privacy or (2) negligently or intentionally cause him emotional distress. We affirm the judgment of the trial court.

The court's memorandum of decision contains the following preface to its findings of fact. "This claim arises out of the plaintiff being sent to a certain doctor for an [independent medical examination (examination)]. As he was on a disability leave for cervical fusion, he assumed it was a physical exam. When he arrived at the appointment, he found the doctor was a psychiatrist and it was to be a psychiatric exam. Solely as a result of the inadvertent mix-up in scheduling the exam, the plaintiff is claiming invasion of privacy, negligent infliction of emotional distress and intentional infliction of emotional distress.

"This incident took place in the middle of several contentious disputes involving the plaintiff and the [department]. All the clashes between the plaintiff and the department are presently subject to grievance procedures, including the actual referral for the psychiatric examination, and are not part of this litigation.[2] The circumstances, however, surrounding his referral for an examination are a necessary part of this litigation." (Footnote added.) The court, thereafter, made the following findings of fact.

The plaintiff was first employed by the city as a special police officer in 1977. He became a patrol officer in 1985 and a sergeant with supervisory responsibilities in 1992. Reynaldo Arriaga was one of the patrol officers whom the plaintiff supervised. In approximately 2004, Arriaga lodged six complaints against the plaintiff, alleging that he had violated department policy. The department internal affairs division investigated and found that five of the six complaints were unsubstantiated. As to the sixth complaint, the internal affairs division found that the plaintiff had violated department policy.[3] Officer Murphy Pierce witnessed the encounter between the plaintiff and Arriaga and corroborated Arriaga's version of the event that gave rise to his harassment complaint.

During the time the plaintiff was a police officer, he sustained several service-related injuries and was placed on inactive duty from time to time. In February, 2005, he was unable to perform his duties as a patrol officer and was placed on the department sick and injured management list. Captain A.J. Perez was respon-

sible for the department's sick and injured management program and, therefore, kept track of the status and medical records of officers who were either sick or injured. The plaintiff was required to meet regularly with Perez. According to Perez, the plaintiff was consumed with the outcome of the internal affairs investigation. Whenever he met or saw Perez, the plaintiff launched into a litany of complaints about the internal affairs process, claiming that he had endured an injustice and that he suffered anguish as a result of the investigation. The plaintiff also talked about the matter to Captain Chapman, who over time "disappeared" whenever he saw the plaintiff coming. Sergeant Joseph Hernandez, the department clerk, was not friendly with the plaintiff, but when the two of them spoke, the plaintiff repeated his complaints about the internal affairs division and accused everyone involved of lying.

The court found that Norwood was appointed chief of police in April, 2006, and that he scheduled a meeting regarding the plaintiff's disciplinary matter for May 19, 2006. Officer Sean Ronan, president of the police union, attended the meeting to represent the plaintiff. The plaintiff began the meeting with an outburst regarding the unjust treatment he had received from the internal affairs division. He told Norwood that the incident had been on his mind for years and that he had written letters requesting a "true" disciplinary hearing. The meeting lasted approximately ten minutes and concluded when Norwood ended the plaintiff's "diatribe" and asked him to leave.

On the basis of his observations of the plaintiff's behavior during the meeting, Norwood asked the department's workers' compensation carrier, Concentra Integrated Services (Concentra), to schedule the plaintiff for an examination with Mark Rubinstein, a psychiatrist.[4] Concentra sent the plaintiff a notice that stated in part that he was to undergo an examination with Rubinstein on June 22, 2006, and that he should take "any x-rays, CT scans, MRI studies and/or other medical records pertaining to" his injury to the examination. Given the instructions in the notice, the plaintiff was under the impression that he was to undergo a physical examination. The court found that there had been a mix-up and that no one had advised the plaintiff that he was to undergo a psychiatric examination. When the plaintiff arrived at Rubinstein's office and learned that he was to undergo a psychiatric examination, he "simply left."

The department rescheduled the plaintiff's examination with Rubinstein for July 7, 2006.[5] When the plaintiff strenuously objected to the examination, the department ordered him to attend.[6] The plaintiff inquired of his union whether he had to undergo the examination; Ronan replied and informed the plaintiff that he had to attend the examination because it concerned his well-

being.[7] The plaintiff returned to Rubinstein's office and was examined by him.

With respect to the plaintiff's work related injuries previously mentioned, the court found that the plaintiff fractured his left hip in 1987, injured his back, and in 1999 injured his neck and back. The plaintiff was awarded a permanent partial disability for which he received workers' compensation benefits. In November, 2005, the plaintiff underwent a cervical fusion at several levels of his spine. He did not return to work following the surgery; and according to Roger H. Kaye, a neurosurgeon, he would never be able to return to active duty as a patrol officer.[8] In October, 2006, Norwood requested that the Board of Police Commissioners (commissioners) afford the plaintiff a service related, involuntary retirement.[9] The commissioners granted the plaintiff a service related, involuntary retirement on November 28, 2006.

The plaintiff commenced the present action in May, 2008, and the defendants removed the case to federal court. The United States District Court for the District of Connecticut granted partial summary judgment in favor of the defendants[10] and, on March 31, 2011, remanded the case to the Superior Court for resolution of the plaintiff's state law claims. The plaintiff appealed to the United States Court of Appeals for the Second Circuit, which affirmed the judgment of the District Court.[11] The decisions of the federal courts were attached as exhibits to Rubinstein's motion for summary judgment in the Superior Court.[12]

Thereafter, the plaintiff revised his complaint and alleged three claims, in multiple counts, against the defendants: wrongful invasion upon his seclusion, intentional infliction of emotional distress, and negligent infliction of emotional distress. The plaintiff alleged that as a consequence of the defendants' invasion of his privacy he was "told that he would be forced to retire based on an alleged psychiatric disability." The defendants denied that they invaded the plaintiff's privacy, that he was forced to retire on the basis of psychiatric disability, or that the alleged intrusion on his privacy caused him emotional distress.[13]

Following trial, the court found that the plaintiff had failed to submit credible evidence of the defendants' improper intent to invade his privacy. To the contrary, the court found that Norwood's motive for referring the plaintiff for a psychiatric evaluation was to ensure his welfare and well-being. The court also found that the plaintiff suffered no emotional distress with respect to Concerta's mistake in scheduling the examination with Rubinstein. The court found that the plaintiff's emotional distress began when the internal affairs division sustained the charges of improper conduct against him and continued to the time of trial. The court, therefore, rendered judgment in favor of the defendants.

Additional facts will be addressed as necessary.

I

The plaintiff claims that the court erred in finding that the defendants did not violate his right to privacy by requiring him to undergo a psychiatric examination. As more specifically stated in his brief, the plaintiff claims that the defendants unreasonably intruded upon his privacy by forcing him to submit to a psychiatric examination and by releasing and disseminating Rubinstein's psychiatric evaluation of him. He further claims that the unreasonable intrusion upon his privacy forced him to retire involuntarily from the department, which resulted in the loss of benefits associated with his employment. The plaintiff's claim is without merit.

The plaintiff's claim presents a mixed question of law and fact to which we apply the plenary standard of review. *Winchester* v. *McCue*, 91 Conn. App. 721, 726, 882 A.2d 143, cert. denied, 276 Conn. 922, 888 A.2d 91 (2005). Our task is to determine whether the court's conclusions are legally and logically correct and find support in the facts that appear in the record. See *Tooley* v. *Metro-North Commuter Railroad Co.*, 58 Conn. App. 485, 492 n.8, 755 A.2d 270 (2000).

To the extent that the plaintiff claims that the defendants released and disseminated Rubinstein's psychiatric evaluation that resulted in his involuntary termination from employment, those assertions are not supported by the court's findings or the record. To begin with, the court found Perez and Hernandez to be credible witnesses, but found that the plaintiff's "entire testimony" was "replete with unfounded factual allegations and contradictions." Credibility determinations are not within the province of appellate courts; *Wheelabrator Bridgeport, L.P.* v. *Bridgeport*, 320 Conn. 361, 133 A.3d 402 (2016); and we will not disturb the court's credibility findings.

The court found that Perez and Hernandez were required to maintain the personnel files of members of the department. The two officers testified that they never copied Rubinstein's report or disseminated it to anyone. They also testified that Rubenstein's report was not mentioned at the commissioners' meeting when the plaintiff's retirement was voted on and that they had no knowledge that the commissioners had a copy of Rubinstein's report. The commissioners did have the plaintiff's orthopedic records, including the report that he was disabled. As to the plaintiff's claim that he lost his employment with the department due to the psychiatric examination, the court found that the commissioners granted him a service related, involuntary retirement on the basis of his physical disabilities.[14] There is substantial evidence in the record to support the court's findings regarding the basis of the plaintiff's involuntary retirement.

Our Supreme Court has observed that "the law of privacy has not developed as a single tort, but as a complex of four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff to be [left] alone." (Internal quotation marks omitted.) *Foncello* v. *Amorossi*, 284 Conn. 225, 234, 931 A.2d 924 (2007). The four categories of invasion of privacy are: "([1]) unreasonable intrusion upon the seclusion of another; ([2]) appropriation of the other's name or likeness; ([3]) unreasonable publicity given to the other's private life; or ([4]) publicity that unreasonably places the other in a false light before the public." (Internal quotation marks omitted.) Id., quoting *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 127–28, 448 A.2d 1317 (1982); see also 3 Restatement (Second), Torts, Invasion of Privacy § 652A, p. 376 (1977). "[P]rivacy actions involve injuries to emotions and mental suffering, while defamation actions involve injury to reputation." *Goodrich* v. *Waterbury Republican-American, Inc.*, supra, 128 n.19. The plaintiff's claim falls within the first category.

We now turn to the question of whether the court properly determined that the defendants did not violate the plaintiff's right to privacy by unreasonably intruding on his solitude when they ordered him to undergo a psychiatric evaluation. See W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 117, pp. 854–56 (intentional interference with another's interest in solitude or seclusion); 3 Restatement (Second), Torts, Invasion of Privacy §§ 652A and 652B, pp. 376, 378 (1977).[15]

To prevail, the plaintiff had to prove by a preponderance of the evidence that by requiring him to undergo a psychiatric examination, the defendants unreasonably intruded on his seclusion and that the intrusion would be highly offensive to a reasonable person.[16] "It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Gauthier*, 73 Conn. App. 781, 787, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

The court found that Norwood sent the plaintiff for a psychiatric examination out of concern for his welfare and to determine his fitness for duty. Moreover, the court found that the plaintiff's alleged emotional injury was not the result of his having been sent to a psychiatric examination, but was the result of the internal affairs investigation. The court's findings and the record support its legal conclusions.

The court found that the plaintiff disagreed with and was upset by the outcome of the internal affairs investigation. When he met with Norwood in May, 2006, he

began the meeting with an outburst regarding the unjust treatment he claimed he had received from the internal affairs division. He told Norwood that the incident had been on his mind for years and that he had written letters requesting a "true" disciplinary hearing. In addition, the plaintiff told Norwood that the charge was ridiculous, and that the officers, including Pierce, were lying. He wanted an opportunity to cross-examine Pierce. He informed Norwood that he could not function and was, in effect, consumed by the decision of the internal affairs division. At trial, the plaintiff testified that Norwood had conducted a kangaroo court, that Norwood did not know what was going on, and that "[h]e's probably manipulated himself." The court stated that the plaintiff "referenced" Norwood as an idiot. According to the plaintiff, he had presented exculpatory evidence to the internal affairs division that was completely stonewalled. As to Ronan, who was present at the meeting as a union representative, the plaintiff testified that Ronan was too intimidated by the officers in attendance.

In addition, the court found that Pierce was subpoenaed and testified at trial that he was present when the incident between the plaintiff and Arriaga took place. Despite Pierce's testimony, the plaintiff maintained throughout trial that Pierce was not present at the time of the incident.

As previously stated, the court found that Hernandez and Perez were credible witnesses. Both officers testified that the chief of police has the authority to request an examination. According to the department patrol guide, the chief of police may direct an officer who is on extended sick leave or an injured list to submit to an examination by a physician designated by the city. The plaintiff himself testified that regardless of whether he was on active or inactive duty, if he behaved in a manner that may have constituted a danger to himself or others, the chief of police would be justified in requesting a psychiatric examination.[17] The plaintiff, however, denied that he was behaving in a manner that warranted a psychiatric evaluation. The court found that Norwood had the authority to refer the plaintiff for a psychiatric examination due to concern for the plaintiff's well-being. Moreover, the court was of the opinion that, as a result of the plaintiff's behavior, a supervising chief of police would be expected to confirm the welfare and well-being of an officer of the department with respect to his fitness for duty. The court found that the plaintiff had presented no credible evidence that the defendants had an improper intent to invade his privacy; to the contrary, Norwood's motive for referring the plaintiff for a psychiatric evaluation was to ensure his welfare and well-being. See *International Brotherhood of Police Officers, Local 361* v. *New Milford*, 81 Conn. App. 726, 736 n.2, 841 A.2d 706 (2004) (municipality has legitimate interest in fitness and emo-

tional stability of armed peace officers).[18]

The plaintiff claims that the defendants unreasonably intruded on his privacy by compelling him to undergo a psychiatric examination. Assuming for the sake of argument only that a psychiatric examination was an intrusion on the plaintiff's seclusion, we must determine whether the intrusion was unreasonable and whether a reasonable person would find the intrusion highly offensive. We conclude that because Norwood wanted to determine the plaintiff's fitness for duty as a Bridgeport police officer, his intrusion into the plaintiff's seclusion, if any, was reasonable and that a reasonable person would not find it highly offensive. See 3 Restatement (Second), supra, §§ 652A and 652B.

The court found through the plaintiff's own testimony that he was consumed by the outcome of the internal affairs investigation and could not function. Ronan's letter to the plaintiff confirming the city's right to order him to undergo a psychiatric examination if it had a bona fide concern about his fitness for duty is circumstantial evidence of the department's interest in determining an officer's fitness for duty. The record discloses evidence that Norwood and other members of the department were concerned about the plaintiff's well-being and thus his fitness for duty. See footnotes 4, 5, and 6 of this opinion. The plaintiff complained repeatedly about his emotional distress to members of the department. The plaintiff, therefore, invited concern for his welfare, which is at odds with his claim in this action that he wished to be left alone. The court found that Norwood wrote to Rubinstein asking him to evaluate the plaintiff's fitness for duty. We conclude that the court's findings that Norwood had a bona fide concern about the plaintiff's well-being and needed to be assured of the plaintiff's fitness for duty is not clearly erroneous. On appeal, the plaintiff has not argued or demonstrated that Norwood's concern for his fitness for duty was not a reasonable basis to order him to undergo a psychiatric examination.

The plaintiff has argued, contrary to the representations of the defendants, that § 3.13 of the patrol guide does not authorize the chief of police to order him to submit to a psychiatric examination. The record includes copies of letters that the plaintiff received from the department ordering him to see Rubinstein pursuant to § 3.13. The court concluded that Norwood had the authority to refer the plaintiff for a psychiatric examination, but it made no finding that § 3.13 of the patrol guide permits the chief of police to send an officer for a *psychiatric* examination.

As to whether a reasonable person would find the defendants' intrusion on the plaintiff's seclusion, if any, highly offensive, the court made no finding in that regard.[19] On appeal, the plaintiff failed to address that aspect of the alleged tort. We, therefore, conclude that

he failed to carry his burden to prove that the defendants invaded his privacy, and that the court properly found in favor of the defendants.

## II

The plaintiff's second claim is that the court improperly concluded that the defendants did not negligently or intentionally cause him emotional distress.[20] We disagree.

The court made the following relevant findings of fact. The plaintiff suffered no emotional distress with respect to the mistake in Concentra's June 2, 2006 letter to the plaintiff, i.e., to take his X rays, CT scans, MRI studies, and/or other medical records to Rubinstein, or the department's failing to tell the plaintiff that he was being sent to a psychiatrist for an examination. The emotional distress from which the plaintiff suffered began and continued as a result of the internal affairs division's earlier finding that he had violated department policy. The plaintiff repeatedly told Perez and Hernandez the devastating emotional effect he felt as a result of the internal affairs investigation. He reported his subjective symptoms on a weekly basis beginning in 2004. The plaintiff started the May, 2006 meeting with Norwood with a litany of complaints, which caused Norwood to end the meeting. At trial, the plaintiff testified that he was consumed by the outcome of the internal affairs investigation and could not function. The plaintiff does not claim that the court's findings are clearly erroneous.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove by a preponderance of the evidence "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Stancuna* v. *Schaffer*, 122 Conn. App. 484, 491–92, 998 A.2d 1221 (2010).

We have reviewed the record and find no evidence that the defendants intended to inflict emotional distress on him or that emotional distress was the likely result of sending the plaintiff for a psychiatric examination. Nor has the plaintiff brought such evidence to our attention. The court also found that the plaintiff's emotional distress was not caused by his going to Rubinstein's office and learning that he was to undergo a psychiatric examination. The plaintiff had been suffering emotional distress long before the defendants ordered him to undergo a psychiatric examination. The plaintiff's preexisting emotional distress was, in fact, a factor motivating Norwood to order the psychiatric examination.

To prevail on a claim of "negligent infliction of emotional distress, the plaintiff must prove: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." (Internal quotation marks omitted.) *Grasso* v. *Connecticut Hospice, Inc.*, 138 Conn. App. 759, 771, 54 A.3d 221 (2012). The plaintiff's claim that the court improperly found that the defendants did not negligently cause him emotional distress fails for the same reason that he cannot prevail on his claim of intentional infliction of emotional distress. Ordering the plaintiff to undergo a psychiatric examination was not the cause of his distress. He was distressed by, and obsessed with, the outcome of the internal affairs investigation. On the basis of our review of the record, we find no evidence that by requiring the plaintiff to undergo a psychiatric examination, the defendants created an unreasonable risk of emotional distress that resulted in illness or bodily harm. For the foregoing reasons, the plaintiff's second claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his complaint, the plaintiff also alleged that Mark Rubinstein, a psychiatrist, wrongfully intruded on his seclusion. The plaintiff later withdrew his claims against Rubinstein, who is not a party to this appeal. Our references to the defendants are to the city, the department and Norwood, collectively.

[2] The court found that the plaintiff's involuntary retirement also is subject to a grievance proceeding.

[3] Arriaga complained that the plaintiff had asked him whether he had sustained certain injuries by falling off his "donkey" or by having "wild sex with [his] Brazilian women."

[4] Norwood wrote to Rubinstein on June 21, 2006, stating: "The Bridgeport Police Department requested an independent medical examination of [the plaintiff] after observing his behavior in the course of a conversation regarding a pending discipline matter. Several employees who witnessed and/or participated in the conversation raised concerns in relation to [the plaintiff's] conduct. Your assistance in this matter will be appreciated."

[5] Norwood again wrote to Rubinstein on June 23, 2006, stating: "On May 19, 2006, I conducted a disciplinary hearing regarding [the plaintiff]. The hearing was subsequently and prematurely suspended after I became very concerned about [the plaintiff's] well-being. Based on my personal observation, [the plaintiff] appeared to be suffering from extreme paranoia, anxiety and depression. He also displayed extreme difficulty articulating his statements in a coherent manner. Based on the above stated observation, it is my recommendation that [the plaintiff] be evaluated to determine his fitness for duty. Your assistance in this matter will be appreciated."

[6] Hernandez wrote to the plaintiff stating in part: "As you are aware, Dr. Rubinstein, with whom you were scheduled for an [Independent Medical Exam (IME)] contacted the Chief's office stating that although you arrived on time, you did not follow through with your scheduled exam. After my conversation with you on Thursday, June 22, it became apparent that there was a misunderstanding as to why the IME was scheduled, causing you some discomfort.

"Chief Norwood is genuinely concerned for your well-being and has instructed me to re-schedule an Independent Medical Exam for you with the understanding that you are being examined [by] a Psychiatrist.

"I have been asked to advise you that this exam is not voluntary on your part and your presence is required per department policy 3.13."

[7] Ronan stated in part: "[T]he Executive Board was presented with your grievance on July [sixth] at our regularly scheduled Executive Board meet-

[8] On July 25, 2006, Kaye conducted an examination of the plaintiff and wrote a letter to Concentra that day stating, in part, that the plaintiff "is partially disabled. His previous job was a field police sergeant. He cannot return to physical police work, but I see no reason he cannot function at a desk job."

[9] On October 6, 2006, Hernandez wrote to the plaintiff stating in part: "As a result of the findings in your recent independent medical exam(s), Chief Norwood has decided to invoke his rights under the departments sick and injury policy, rule 3.13.19 and article 42, and seek your retirement by the Honorable Board of Police Commissioners." The letter, which was admitted into evidence at trial, stated that a copy of the examination was attached, but no such copy is attached to the exhibit.

[10] In its decision, the District Court primarily addressed the plaintiff's claim against Rubinstein for wrongfully intruding on his right to seclusion. The District Court agreed with Rubinstein that summary judgment should be granted in his favor with respect to General Statutes § 52-146e, which protects a psychiatric patient's right to confidentiality. The court concluded that application of the statute to the present examination circumstances was not appropriate. The court reasoned that a principal purpose of the statute is to give a patient an incentive to make full disclosure to a physician in order to obtain effective treatment. However, "[c]ommunications that bear no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute . . . ." *Bieluch* v. *Bieluch*, 190 Conn. 813, 819, 462 A.2d 1060 (1983). Furthermore, a patient may claim the privilege of confidentiality only if he or she had a justified expectation that his or her communication would not be disclosed publicly. *State* v. *White*, 169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). The court found that the plaintiff had no expectation of privacy as the notice from Concentra stated that no doctor-patient relationship was created during the examination. Also Rubinstein orally advised the plaintiff that his evaluation would not be kept confidential. The District Court found, therefore, that the plaintiff had waived his right to privacy.

The District Court found that the plaintiff "was not engaged in a therapeutic relationship with Rubinstein, but rather, was undergoing an evaluation at the request of his employer. The evaluation was arranged through his employer, with the doctor of his employer's choosing, paid for by his employer, and done for the purpose of evaluating [the plaintiff's] 'fitness for duty.' The purpose of [the plaintiff's] meeting with Rubinstein bears no relationship to the purpose for which the psychiatrist-patient privilege was enacted, and therefore is not sheltered by § 52-146e."

The District Court also granted the defendants' motion for summary judgment with respect to the plaintiff's federal law claims and declined to exercise jurisdiction pursuant to 28 U.S.C. § 1367 (c) over the plaintiff's remaining state law claims against any of the defendants. *Davidson* v. *Bridgeport*, United States District Court, Docket No. 3:08CV00971 (AWT) (D. Conn. March 31, 2011).

[11] See *Davidson* v. *Bridgeport*, 487 Fed. Appx. 590 (2d Cir. 2012). The Court of Appeals concluded that the plaintiff could not prevail on his 42 U.S.C. § 1983 substantive due process and fourth amendment claims that the city invaded his privacy by subjecting him to a psychiatric examination because no jury could conclude that the city's request that the plaintiff undergo the examination was either arbitrary or unreasonable. The Court of Appeals also concluded that the *plaintiff could not prevail on his substantive due process claim* because he could not demonstrate that the city engaged in deliberate malfeasance by intending to injure or spite him.

The plaintiff's fourth amendment claim that the examination constituted an unreasonable search also failed. Although the District Court found that the plaintiff had waived his fourth amendment right to privacy by agreeing to the examination after he had been warned that Rubinstein's report would be shared with Norwood and the department, the Court of Appeals did not reach that issue as there was *no genuine issue of material fact as to the reasonableness of the city's request for the examination*. The city ordered the examination in the context of the plaintiff's employment, not the investigation of a crime or some other law enforcement objective. The examination, therefore, fell in the category of a special needs search. See *Lynch* v. *New York*, 589 F.3d 94, 102 (2d Cir. 2009), cert. denied, 562 U.S. 995, 131 S. Ct. 415, 178 L. Ed. 2d 344 (2010).

On the basis of the record, the Court of Appeals reasoned that there were no genuine issues of material fact and that a fact finder could only conclude that any search was reasonable. The plaintiff's privacy interest in his personal medical information is diminished to the extent that physical and mental fitness are essential to his work as an armed law enforcement officer. See *National Treasury Employees Union* v. *Von Raab*, 489 U.S. 656, 672, 109 S. Ct. 1384, 103 L. Ed. 2d 685 (1989); *Lynch* v. *New York*, supra, 589 F.3d 103.

[12] We may take judicial notice of the trial court's file. *Dockter* v. *Slowik*, 91 Conn. App. 448, 459 n.7, 881 A.2d 479, cert. denied, 276 Conn. 919, 888 A.2d 87 (2005).

[13] In response to the revised complaint, the defendants asserted several special defenses, including governmental, municipal and sovereign immunity, res judicata, waiver, laches, collateral estoppel, and that the complaint failed to state a cause of action against the defendants. Our review of the record reveals that the defendants filed no motions to strike or for summary judgment predicated on their special defenses. See footnote 20 of this opinion.

[14] See footnotes 8 and 9 of this opinion.

[15] Section 652A of the Restatement (Second) of Torts provides in relevant part: "(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other. (2) The right of privacy is invaded by (a) *unreasonable* intrusion upon the seclusion of another, as stated in § 652B . . . ." (Emphasis added.)

Section 652B of the Restatement (Second) of Torts provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

Read together, § 652A instructs the reader to consult § 652B for the definition of what constitutes an unreasonable intrusion upon the seclusion of another. Section 652B states that one who intentionally intrudes on the seclusion of another is subject to liability if the intrusion would be highly offensive to a reasonable person.

[16] The parties have not identified a Connecticut case that clearly sets out the elements of a cause of action alleging invasion of privacy by unreasonable intrusion upon the seclusion of another in the context of a mandatory employment related psychiatric examination, and we have found none.

[17] The plaintiff himself testified that the chief of police had authority to send an officer who was on active duty for a psychiatric examination. The following exchange took place between the defendants' counsel, the court, and the plaintiff:

"[The Defendants' Counsel]: [I]s it your testimony, your understanding that you're not within the authority of the police chief when you are not active as a police officer?

"[The Plaintiff]: I didn't say that. The police department has authority over me—he would have authority over me if I was out in the street doing something bizarre and everything like that then he could probably order me to see someone, but I wasn't doing anything like that. I was going about my affairs. I wasn't a danger to myself or to other people, and I wasn't contemplating coming back. I hadn't gotten a medical release. I hadn't reached maximum medical improvement.

"[The Defendants' Counsel]: But you're still under the auspices of the chief of police.

"[The Plaintiff]: Yes.

"The Court: Let me ask you this. If you were not active . . . but if you were a danger to yourself and other people . . .

"[The Plaintiff]: But I wasn't.

"The Court: That's not my question.

"[The Plaintiff]: All right.

"The Court: Assuming you were . . .

"[The Plaintiff]: Oh, yeah.

"The Court:  . . . then they could have sent you for a . . .

"[The Plaintiff]: Yeah, I would have probably—they would have picked me up and three days up in the psychiatric hospital and need to be, you know, somewhere else. Yes, I agree to that."

[18] In its decision affirming the judgment of the District Court in the present matter; see footnote 11 of this opinion; the United States Court of Appeals for the Second Circuit cited a United States Supreme Court case explaining why some federal law enforcement employees have a diminished expectation of privacy with respect to their performance or fitness for duty. *David-*

*son* v. *Bridgeport*, 487 Fed. Appx. 590, 592–93 (2d Cir. 2012).

In *National Treasury Employees Union* v. *Von Raab*, 489 U.S. 656, 109 S. Ct. 1384, 103 L. Ed. 2d 685 (1989), the United States Supreme Court evaluated whether requiring customs agents to submit to a urinalysis test violated the fourth amendment to the United States Constitution. The court stated, in part: "We think Customs employees who are directly involved in the interdiction of illegal drugs or who are required to carry firearms in the line of duty likewise have a diminished expectation of privacy in respect to the intrusions occasioned by a urine test. Unlike most private citizens or government employees in general, employees involved in drug interdiction reasonably should expect effective inquiry into their fitness and probity. Much the same is true of employees who are required to carry firearms. Because successful performance of their duties depends uniquely on their judgment and dexterity, these employees cannot reasonably expect to keep from the Service personal information that bears directly on their fitness. . . . While reasonable tests designed to elicit this information doubtless infringe some privacy expectations, we do not believe these expectations outweigh the Government's compelling interests in safety and in the integrity of our borders." (Citation omitted.) Id., 672. The interest of municipal governments in safety and the fitness for duty of its officers who carry firearms also diminishes an officer's expectation of privacy. *Davidson* v. *Bridgeport,* supra, 487 Fed. Appx. 593.

[19] We note that the trial court did not use the words "unreasonable intrusion," which is the language of the Restatement. The court used the words "improper motive," which we construe to mean, on the basis of the court's finding that Norwood was concerned about the plaintiff's welfare and fitness for duty, that the intrusion into the plaintiff's seclusion, if any, was not unreasonable.

[20] In their brief, the defendants argue that the plaintiff's claims for the infliction of emotional distress do not comport with the requirements of General Statutes § 7-465 (a) in that the plaintiff did not allege notice to the city, that the city is obligated to indemnify a defendant, or that the plaintiff commenced a separate action against a city employee. The trial court did not decide the case on the basis of any of the defendants' special defenses. See footnote 13 of this opinion. We do not review claims raised for the first time on appeal. See *Lawton* v. *Weiner,* 91 Conn. App. 698, 709 n.7, 882 A.2d 151 (2005).