******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LAURENCE V. PARNOFF *v.* AQUARION WATER COMPANY OF CONNECTICUT ET AL.
## (AC 40383)

Keller, Moll and Eveleigh, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant water company, A Co., and its employees, the defendants D, L and K, for trespass, negligent and intentional infliction of emotional distress, invasion of privacy and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) in connection with their alleged conduct in entering the plaintiff's property without his consent in July, 2011, to service one of A Co.'s fire hydrants on the property. During the incident, the defendants accused the plaintiff of tampering with the hydrant to steal water. The plaintiff denied stealing any water and ordered the defendants to immediately leave the property, which they refused to do because of public health and safety concerns. Thereafter, the police were called, and the plaintiff eventually was arrested. The defendants filed a motion for summary judgment as to all seventeen counts of the plaintiff's revised complaint that were directed against them. In support of their motion, the defendants filed a memorandum of law and submitted thirty-two exhibits, including affidavits from D, L and K, A Co.'s maintenance records for the hydrant and a tariff approved by the Public Utilities Regulatory Authority authorizing A Co. to access the subject property. The trial court granted the defendants' motion for summary judgment as to all claims except with respect to the negligent infliction of emotional distress claims alleged in counts six through eight. The defendants subsequently filed a supplemental motion for summary judgment as to those remaining claims against them on the ground that the claims were barred by the applicable two year statute of limitations (§ 52-584). They also filed a sealed copy of medical records documenting the plaintiff's visit with a psychiatrist in September, 2011, which indicated that the plaintiff had been diagnosed at that time with depression related to the incident. The trial court granted the supplemental motion for summary judgment on the basis of the medical evidence, concluding that the claims were time barred because the actionable harm was sustained in September, 2011, and the action was commenced in July, 2014. On the plaintiff's appeal to this court, *held*:

1. The plaintiff's claim that the trial court improperly granted the defendants' motion for summary judgment as to his trespass claims because the defendants use of A Co.'s easement on his property was unreasonable was not reviewable, as the trespass claims were moot; because the plaintiff challenged the granting of the motion for summary judgment on his trespass claims only on the issue of the defendants' use of the easement and did not challenge the other ground on which the trial court based its ruling, namely, that the defendants' entry on the property was authorized by the regulatory authority, there still existed an unchallenged, independent ground on which the court based its decision and, therefore, there was no practical relief that could be afforded the plaintiff, and although the plaintiff raised the issue of whether the entry on his property was authorized by the regulatory authority in his reply brief, claims raised for the first time in a reply brief are not reviewable.

2. The trial court properly granted the defendants' supplemental motion for summary judgment and determined that the plaintiff's negligent infliction of emotional distress claims were barred by the statute of limitations set forth in § 52-584: the plaintiff's medical records having indicated that the plaintiff discovered some form of actionable harm in September, 2011, and the plaintiff not having commenced this action until July, 2014, it was clear that the action was commenced well beyond the two year limitation period, and although the plaintiff averred in an affidavit that he did not discover the injurious effect that the July, 2011 incident had on him until the summer of 2016, that averment was merely a bald statement that a genuine issue of material fact existed, not proof that supported the existence of such an issue; moreover, the plaintiff's claim

that the continuing course of conduct doctrine tolled the statute of limitations was unavailing, as the statute began to run once the plaintiff discovered his injury and, thus, the continuing course of conduct doctrine did not apply.

3. The trial court properly granted the defendants' motion for summary judgment as to the plaintiff's invasion of privacy by intrusion on seclusion claims, as that court properly concluded that, as matter of law, the alleged tortious conduct of the defendants failed to establish a claim of intrusion on seclusion, which required that he prove an intentional intrusion on his solitude or seclusion that would be highly offensive to a reasonable person: even if the plaintiff was correct in that the defendants misused their easement or tariff rights and their conduct constituted a trespass, a reasonable person could not conclude on the basis of the record that the defendants thrusted or forced in or on the plaintiff's property as to constitute an intentional intrusion, nor could a reasonable person find that the defendants' presence on the property, coupled with statements made to the plaintiff accusing him of stealing water, was the type of substantial interference necessary to constitute an intentional intrusion; moreover, the submissions before the trial court did not support a finding that the driveway area where the defendants parked their vehicles, the area where they walked to discover and service the hydrant, or the open canopy tent located approximately ten feet from the hydrant where they found a missing hydrant cap, were private areas in which the plaintiff had secluded himself and had an objectively reasonable expectation of seclusion or solitude; furthermore, the submissions demonstrated that the defendants were servicing a hydrant that A Co. had maintained for many decades, and although D, L and K walked around the plaintiff's property to discover the hydrant, searched in the area around the hydrant for the missing cap and allegedly accused the plaintiff of stealing water, a reasonable person would not find that conduct to be highly offensive.

4. The plaintiff's claim that the trial court improperly granted the defendants' motion summary judgment as to his intentional infliction of emotional distress claims was without merit, as the defendants' conduct was insufficient to form the basis for such an action; the defendants' conduct on the day of the incident did not come close to extreme and outrageous conduct, and contrary to the plaintiff's contention that the defendants' continued cooperation with an allegedly unfounded criminal investigation taken together with the events on the day of the incident satisfied the standard of extreme and outrageous conduct, the defendants' mere cooperation with a criminal investigation by the state related to the incident did not constitute conduct that was so atrocious as to exceed all bounds usually tolerated by a decent society.

5. The trial court properly rendered summary judgment in favor of A Co. as to the plaintiff's CUTPA claim, the plaintiff having failed to allege and demonstrate that he suffered any ascertainable loss; contrary to the plaintiff's contention that punitive damages and attorney's fees are sufficient to fulfill the ascertainable loss requirement under CUTPA, those potential remedies, which are available to a plaintiff once he has met the threshold barrier of the ascertainable loss requirement and prevails on his CUTPA claim, cannot be the basis of demonstrating an ascertainable loss, and although the plaintiff claimed that his emotional distress fulfilled the ascertainable loss requirement, this court has determined previously that a claim of emotional distress does not constitute an ascertainable loss of money or property for purposes of CUTPA.

Argued October 22, 2018—officially released March 5, 2019

*Procedural History*

Action to recover damages for, inter alia, trespass, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Radcliffe, J.*, granted in part the motion for summary judgment filed by the named defendant et al. and rendered judgment thereon; thereafter, the court granted the supplemental motion for summary judgment filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to this court.

*Affirmed.*

*Thomas J. Weihing*, with whom, on the brief, were *John T. Bochanis* and *Joeseph D. Compagnone*, for the appellant (plaintiff).

*Edward P. McCreery*, with whom, on the brief, were *Adam S. Mocciolo* and *Martha M. Royston*, for the appellees (named defendant et al.).

*Opinion*

KELLER, J. This appeal, and a related appeal, *Parnoff* v. *Aquarion Water Co. of Connecticut*, 188 Conn. App. , A.3d (2019), which we also officially release today, involve a challenge by the plaintiff, Laurence V. Parnoff, to the summary judgments rendered by the trial court in favor of the defendants in this action. In this appeal, the plaintiff appeals from the summary judgments rendered by the trial court in favor of the defendants Aquarion Water Company of Connecticut (Aquarion) and its employees, Beverly A. Doyle, David Lathlean, and Kyle Lavin.[1] The plaintiff claims that the trial court erred by rendering summary judgment in favor of the defendants as to his (1) claims of trespass, (2) claims of negligent infliction of emotional distress, (3) claims of invasion of privacy, (4) claims of intentional infliction of emotional distress, and (5) claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b (a). For the reasons set forth in this opinion, we disagree with the plaintiff and affirm the judgments of the trial court.

In July, 2014, the plaintiff commenced the present action against the defendants, alleging in his twenty-five count revised complaint filed on May 24, 2016, various claims arising from a July 11, 2011 incident that took place on his property at 3392 Huntington Road, Stratford, and the adjacent lot he owned. Therein, he alleged, inter alia, that the defendants trespassed onto his property beyond any easement rights of Aquarion and did so against his express orders or consent. He alleged that Lavin "ran up to [the plaintiff] shouting 'you're stealing water' and put his camera in [the plaintiff's] face." The plaintiff alleged that he denied stealing any water and instructed the defendants to "immediately remove their three vehicles from [his property] and leave."

Furthermore, the plaintiff alleged that both he and Lathlean called the Stratford Police Department.[2] After doing so, the plaintiff alleged that Police "[O]fficer [Glynn] McGlynn was dispatched by the Stratford Police Department and told of both calls." Upon arrival, the plaintiff asserted, inter alia, that McGlynn "spoke at length with the Aquarion employees" and asked the plaintiff to "leave because McGlynn was conducting an investigation." The plaintiff alleged that McGlynn eventually arrested him. He averred that McGlynn transported him to a holding cell at the Stratford Police Department, allowing the defendants to trespass further on his property. Moreover, he asserted that the defendants "exhort[ed] public officials to take further baseless action to humiliate and embarrass" him and publicly accused him of theft. In his complaint, the plaintiff included counts against each of the four defendants for trespass (counts one through four), negligent infliction of emotional distress (counts five through

eight), intentional infliction of emotional distress (counts nine through twelve), and invasion of privacy (counts thirteen through sixteen). He also included a count against Aquarion alleging a violation under CUTPA (count seventeen).[3]

On July 13, 2016, the defendants filed an answer with eleven special defenses.[4] The defendants alleged that the plaintiff's trespass claims in counts one through four were barred because Doyle, Lathlean, and Lavin's entry, presence, and activities on the property were expressly permitted by easements, reservations, and exceptions held by Aquarion. As to counts five through eight, the defendants argued that the plaintiff's claims were barred by the relevant statute of limitations. As to all the counts, the defendants alleged the plaintiff's claims were barred in whole or in part by the plaintiff's waiver because he had agreed, inter alia, to permit Aquarion to "inspect, maintain and repair hydrants"; by the doctrines of absolute and qualified immunity; by the doctrine of privilege with consent; by the doctrine of privilege; by the doctrine of consent or license; by the plaintiff's contributory negligence; and because the defendants' actions were authorized and/or permitted by federal and state laws, rules and regulations, including those promulgated and approved by the Connecticut Public Utilities Regulatory Authority (PURA) and the Connecticut Department of Energy and Environmental Protection. As to the plaintiff's claims in equity, the defendants alleged that the claims were barred in whole or in part by the doctrine of unclean hands.[5]

On August 1, 2016, the defendants filed a motion for summary judgment as to all of the counts directed against them. As to the trespass allegations in counts one through four, the defendants argued that, in addition to their rights pursuant to an easement on the plaintiff's property, they also had a tariff from PURA to access the plaintiff's property.[6] In regard to counts five through twelve and seventeen, which included the claims of negligent infliction of emotional distress, intentional infliction of emotional distress, and a violation of CUTPA, the defendants argued that the counts were barred by absolute immunity for all statements made in relation to the judicial action brought against the plaintiff and any statements made to the Statewide Grievance Committee, which began an investigation of the plaintiff, a member of the Connecticut bar, related to the incident on July 11, 2011. They also argued that qualified immunity barred the counts for all communications made to the police or other investigative officers on July 11, 2011, the day before criminal charges arising from the July 11, 2011 incident were filed against the plaintiff.

As to counts five through eight, in which the plaintiff raised claims of negligent infliction of emotional distress, the defendants argued they were time barred

under the applicable statute of limitations. With respect to counts nine through twelve, in which the plaintiff raised claims of intentional infliction of emotional distress, the defendants argued that the counts were deficient because the defendants' conduct could not be regarded as extreme or outrageous. Furthermore, with respect to counts thirteen through sixteen, the defendants argued that the pleadings were facially deficient as to the plaintiff's invasion of privacy by unreasonable intrusion upon seclusion claims because the conduct alleged by the plaintiff cannot be regarded as highly offensive. Lastly, as to count seventeen, Aquarion alleged that the plaintiff failed to establish a CUTPA violation because he did not suffer an ascertainable loss as required under the act, a trespass or police report does not form a business relationship to satisfy the commercial transaction requirement, and the conduct complained of "does not rise to the required level of a deceptive practice or violation" under the act.

In support of their motion, the defendants filed a memorandum of law and thirty-two exhibits.[7] These exhibits demonstrate that on the morning of July 11, 2011, the defendants were servicing one of Aquarion's hydrants, which was located on the plaintiff's property. When Lavin and Lathean first located the hydrant, they found that it was missing a cap and was leaking, and that the ground was wet. They also observed a red garden hose on the ground next to the hydrant, which they traced to a goat pen located next to a pond. Additionally, they observed other hoses located under leaves that appeared to lead to the goat pen, where two goats resided. These hoses branched off from a red hose that was located on the fencing of the goat pen. Lathlean and Lavin began searching for the missing hydrant cap in the immediate vicinity of the hydrant and walked into an open canopy tent located about ten feet from the hydrant, where they spotted the missing hydrant cap on the floor of the plaintiff's tractor, along with a pipe wrench. The defendants provided photographs of the altered cap, which showed that a hole was drilled into it with a connection welded over it. Lavin and Lathlean's affidavits demonstrate that they suspected that tampering with the fire hydrant had occurred, potentially including an unsafe cross-connection to the water system, which they believed could lead to contamination and endanger the health and safety of Aquarion's customers.[8] They attested that the plaintiff confronted them and yelled at them to get off his property. They also attested that the plaintiff threatened to get a gun and kill them if they did not get off his property. At that point, Lathlean decided to call the police. By submitting the plaintiff's deposition testimony, the defendants demonstrated that the plaintiff knew that they were Aquarion workers and had arrived in Aquarion trucks, that there was a hydrant on his property, and that he suspected that they were there to inspect

the hydrant even before he walked over to them.

The plaintiff filed an amended memorandum of law in opposition to the defendants' motion for summary judgment on August 26, 2016, which he supported with court transcripts, deposition transcripts, and an interrogatory response from the defendants. On August 29, 2016, the defendants filed a reply memorandum to the plaintiff's opposition, and the court held a hearing on the motion.

On January 5, 2017, the court issued a memorandum of decision. As to the trespass claims in counts one through four, the court concluded that the defendants were entitled to summary judgment on two separate grounds: (1) Aquarion "has an express easement to enter upon the property"; and (2) even in the absence of an express easement, the defendants' entry was also "permitted by the Department of Public Utilit[y] Control."[9] As to the negligent infliction of emotional distress claim in count five directed against Doyle, the court concluded that summary judgment was appropriate because there was no genuine issue of material fact and that her conduct did not rise to the level necessary to sustain such a claim because she never spoke to the plaintiff. As to the negligent infliction of emotional distress claims against the other defendants in counts six through eight, the court denied the motion for summary judgment on their statute of limitations argument because it concluded that a trier of fact might find "that the actionable harm was not sustained, until sometime after July 11, 2011, when the extent of [the plaintiff's] alleged distress became known."

As to the intentional infliction of emotional distress claims in counts nine through twelve, the court concluded that the defendants' alleged conduct "does not even approach the threshold for extreme and outrageous conduct." As to the invasion of privacy claims in counts thirteen through sixteen, the court granted the motion for summary judgment stating that the "claims are utterly unsupported by the facts, even when viewed in the light most favorable to the plaintiff." As to the CUTPA claim in count seventeen against Aquarion, the court concluded, inter alia, that the plaintiff failed to present evidence to "establish any ascertainable loss."

On February 7, 2017, the defendants filed a motion requesting permission to file a supplemental motion for summary judgment because they obtained "irrefutable evidence" that showed that the plaintiff failed to commence the action on the remaining negligent infliction of emotional distress counts (six through eight) within the applicable statute of limitations. On the same day, the court granted the motion, and the defendants filed a supplemental motion for summary judgment. On March 27, 2017, the defendant filed an objection to the defendants' supplemental motion, attaching to it an affidavit

and deposition transcripts. On April 10, 2017, the court held a hearing on the motion and rendered summary judgment in favor of the defendants on the remaining counts.[10] It concluded that the "actionable harm was sustained in September of 2011, and the action brought in July of 2014 [was] time barred by the applicable statute of limitations . . . ." (Citation omitted.) This appeal followed.

Our review of a trial court's decision granting a motion for summary judgment is well established. Practice Book § 17-49 provides that the "judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 645–46, 127 A.3d 257 (2015). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts

set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 773, 176 A.3d 1 (2018).

I

The plaintiff first claims that the court improperly granted the defendants' motion for summary judgment on his trespass claims, arguing that the defendants' use of the easement was unreasonable and, thus, constituted a trespass. We need not, however, reach the merits of the plaintiff's trespass claims because we conclude that those claims are moot.

"Where an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 755, 183 A.3d 611 (2018); see also *Windsor Federal Savings & Loan Assn.* v. *Reliable Mechanical Contractors, LLC*, 175 Conn. App. 651, 661–62, 168 A.3d 586 (2017).

In the present case, even if we were to determine that the plaintiff's claims regarding the defendants' use of the easement had merit, there still would exist another ground on which the trial court based its judgment—i.e., that "entry by Aquarion . . . employees is permitted by the Department of Public Utilit[y] Control"—which has not been properly challenged on appeal. We have found no place in the plaintiff's principal brief where he challenges this other ground for granting the motion for summary judgment on his trespass claims. Although he appears to raise the issue for the first time in his reply brief after the defendants' brief drew his attention to this independent ground, it is a well established principle that "[c]laims . . . are unreviewable when raised for the first time in a reply brief." (Internal quotation marks omitted.) *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009).

Accordingly, we conclude that the plaintiff's trespass claims are moot, and, therefore, this court lacks subject matter jurisdiction to consider those claims.

II

The plaintiff next challenges the court's granting of the supplemental motion for summary judgment as to his negligent infliction of emotional distress claims. In particular, he argues that the court improperly concluded that his claims were barred by the two year statute of limitations in General Statutes § 52-584[11] because, in his view, "the continuing course of conduct

doctrine may be applied in the present case to toll the statute of limitations."[12] The defendants argue, however, that the continuing course of conduct doctrine is inapplicable as a matter of law in this case. We agree with the defendants.

Section 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." We have explained that this statute imposes two particular time requirements on plaintiffs. "The first requirement, referred to as the discovery portion . . . requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . . The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of. . . . The three year period specifies the time beyond which an action under § 52-584 is absolutely barred, and the three year period is, therefore, a statute of repose." (Emphasis omitted; internal quotation marks omitted.) *Mollica* v. *Toohey*, 134 Conn. App. 607, 612, 39 A.3d 1202 (2012). We have also explained that the continuing course of conduct doctrine does not apply to the discovery portion of § 52-584. See *Rosato* v. *Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004) (explaining that policy behind continuing course of conduct doctrine no longer has any force once harm discovered). We thus have concluded that "[o]nce the plaintiff has discovered [the] injury, the statute begins to run." (Internal quotation marks omitted.) *Mollica* v. *Toohey*, supra, 614.

"When applying § 52-584 to determine whether an action was timely commenced, this court has held that an injury occurs when a party suffers some form of actionable harm. . . . Actionable harm occurs when the plaintiff discovers . . . that he or she has been injured and that the defendant's conduct caused such injury. . . . The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Internal quotation marks omitted.) *Wojtkiewicz* v. *Middlesex Hospital*, 141 Conn. App. 282, 287, 60 A.3d 1028, cert. denied, 308 Conn. 949, 67 A.3d 291 (2013).

On February 7, 2017, the defendants filed their supplemental motion for summary judgment and a corresponding memorandum of law. The defendants also filed with their motion a sealed copy of the plaintiff's medical records that documented the plaintiff's visit with a psy-

chiatrist on September 6, 2011—two months after the incident on his property. The defendants argued that the plaintiff did not commence counts six through eight within two years of his actionable harm and, thus, was time barred from bringing those counts. First, the defendants argued that the plaintiff's actionable harm occurred on the day of the incident, July 11, 2011, because the plaintiff alleges in his complaint that the defendants terrorized him on that day, which made him fearful and anxious. Second, they argued that even if the plaintiff did not realize that the defendants caused him emotional distress on July 11, 2011, his medical records indisputably demonstrate that he discovered his injury on September 6, 2011, when his psychiatrist diagnosed him with depression after he complained that he was "depressed/angry" because "water officials came to his property and accused him of stealing water." The plaintiff indicated to the psychiatrist that he was going to "hurt" the defendants by seeking legal recourse.

On March 27, 2017, the plaintiff filed an objection to the defendants' supplemental motion for summary judgment and a memorandum of law. In support of his objection, he included an affidavit and excerpts from deposition transcripts of Doyle, Lavin, and Lathlean. In his affidavit, he broadly attested that he "did not learn until the summer of 2016 the nature and effect on me of the medical condition the July 11, 2011 incident on my property and its continuing sequelae had caused." On the basis of that representation, he argued that the present action was filed well within the statutory period. On April 10, 2017, the court granted the defendants' supplemental motion for summary judgment on the basis of the supplemental medical evidence provided to it and concluded that the statute of limitations had expired.

As we previously indicated, "once the plaintiff has discovered [his] injury, the statute begins to run." *Rosato* v. *Mascardo*, supra, 82 Conn. App. 405. It is clear from the plaintiff's medical records that the plaintiff discovered that the defendants caused him injury during the events of July 11, 2011, no later than September 6, 2011. Although the plaintiff attests in his affidavit that he did not discover the injurious effect that the July 11, 2011 incident had on him until the summer of 2016, that affirmation is merely a bald statement that an issue of fact exists, not proof that supports the existence of such issue. See *Brooks* v. *Sweeney*, 299 Conn. 196, 221, 9 A.3d 347 (2010) ("[The party opposing a motion for summary judgment] must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." [Internal quotation marks omitted.]). The plaintiff failed to recite

specific facts that contradict those stated in the defendants' documents. See *Brusby* v. *Metropolitan District*, supra, 160 Conn. App. 646 ("The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." [Internal quotation marks omitted.]).

On the basis of the medical evidence presented by the defendants, we conclude that the plaintiff discovered some form of actionable harm in September, 2011. Because he did not bring this action until July, 2014, it is clear that it was commenced well beyond the two year limitation period. Accordingly, we conclude that the trial court properly granted the defendants' supplemental motion for summary judgment as to his negligent infliction of emotional distress claims in counts six through eight.

### III

The plaintiff's third claim on appeal challenges the granting of the motion for summary judgment as to his invasion of privacy claims against the defendants. He argues that the defendants "unreasonably intruded upon his seclusion" when they "proceeded to walk well beyond any claimed consent, authority, or reasonable use of an easement." Moreover, he argues that the defendants subjected him and his family to "offensive verbal comments," including making accusations that he was stealing water. The defendants argue that the court correctly held that as a matter of law the conduct the plaintiff alleges cannot sustain a claim of intrusion upon seclusion. We agree with the defendants.

In 1982, our Supreme Court recognized for the first time a cause of action for invasion of privacy. See *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 127, 448 A.2d 1317 (1982). The court observed that "the law of privacy has not developed as a single tort, but as a complex of four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff to be let alone." (Internal quotation marks omitted.) Id., 127–28, citing Prosser, Torts (4th Ed. 1971) § 117, p. 804. The court instructed that "the four categories of invasion of privacy are set forth in 3 Restatement (Second), Torts § 652A [1977] as follows: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." Id., 128.

In the parties' appellate briefs, they indicated that neither this court nor our Supreme Court has had the occasion to define what is required under the intrusion upon seclusion category of invasion of privacy, but briefed their arguments based on the formulation set forth in the Restatement (Second) of Torts. After the parties submitted their principal briefs, but prior to oral argument, this court addressed for the first time an intrusion upon seclusion claim in *Davidson* v. *Bridgeport*, 180 Conn. App. 18, 30, 182 A.3d 639 (2018). In *Davidson*, we noted that "[§] 652B of the Restatement (Second) of Torts provides: One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Id., 30 n.15. Relying on the Restatement, as our Supreme Court did in *Goodrich* when it adopted the invasion of privacy cause of action, we indicated broadly that the plaintiff was required to prove by a preponderance of the evidence "that the defendants unreasonably intruded on his seclusion and that the intrusion would be highly offensive to a reasonable person." Id., 30. We held in that case that the plaintiff "failed to carry his burden to prove that the defendants invaded his privacy . . . ." Id., 35.

It is clear from the Restatement's language that to establish a claim for intrusion upon the seclusion of another, a plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person. See, e.g., *Mauri* v. *Smith*, 324 Or. 476, 483, 929 P.2d 307 (1996); see also *Wolf* v. *Regardie*, 553 A.2d 1213, 1217 (D.C. 1989); *Swarthout* v. *Mutual Service Life Ins. Co.*, 632 N.W.2d 741, 744–45 (Minn. App. 2001).[13] For there to be liability, the defendant's interference with the plaintiff's seclusion must be substantial, must be of a kind that would be highly offensive to a reasonable person, and must be a result of conduct to which a reasonable person would strongly object. See 3 Restatement (Second), supra, § 652B, comment (d). In the context of intrusion upon seclusion, questions about the reasonable person standard are ordinarily questions of fact, but they become questions of law if reasonable persons can draw only one conclusion from the evidence. See *Smith* v. *Leuthner*, 156 Conn. 422, 424–25, 242 A.2d 728 (1968).

To analyze whether the evidence created a question of fact, we will examine each of those elements in turn. The plaintiff argues that the defendants unreasonably intruded upon his seclusion by going onto his private premises. He argues that the defendants "proceeded to walk well beyond any claimed consent, authority, or reasonable use of an easement," and subjected him and

his family to "offensive verbal comments" by accusing him of stealing water.

As stated previously, the first element of the tort of invasion of privacy by intrusion upon seclusion is an intentional intrusion, physical or otherwise. Although courts often use the phrase "intentional intrusion," the Restatement does not define it. A few courts, however, have done so. See, e.g., *O'Donnell* v. *United States*, 891 F.2d 1079, 1082 (3d Cir. 1989). In *O'Donnell*, the plaintiff was a former patient of the Veterans Administration (administration), who brought an action against the administration for intrusion upon seclusion when it released a summary of his psychiatric treatment to his employer without obtaining authorization to do so. Id., 1081. The trial court granted the administration's motion for summary judgment. Id., 1080. In reviewing the claim on appeal, the United States Court of Appeals for the Third Circuit defined "intent" by looking to § 8 of the Restatement (Second) of Torts, which defines the term to mean "that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *O'Donnell* v. *United States*, supra, 1083. Because the Restatement is devoid of any definition for the term "intrusion," the court looked to a dictionary for guidance. Id. We follow suit. Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) defines "intrude" to mean to thrust or force in or upon someone or something especially without permission or welcome. Moreover, the comments and illustrations to § 652B of the Restatement (Second) of Torts suggest that an intrusion upon seclusion claim typically involves a defendant who does not believe that he or she has either the necessary personal permission or legal authority to do the intrusive act. See 3 Restatement (Second), supra, § 652B, comment (b), illustrations (1)–(5).[14] We thus conclude, as other courts have, that an actor commits an intentional intrusion if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act. See, e.g., *Mauri* v. *Smith*, supra, 324 Or. 484; *O'Donnell* v. *United States*, supra, 1083.

In the present case, the defendants' submissions in support of their motion for summary judgment reflect that they believed that they had permission to service the hydrant on the plaintiff's property by either the easement or the tariff approved by PURA. Additionally, they provided the hydrant maintenance records from 1965 to 2004 and 2008 to 2014, which demonstrated that they had routinely maintained the hydrant on the plaintiff's property for decades. Even if we assume arguendo that the plaintiff was correct in that the defendants misused their easement or tariff rights and their conduct constituted a trespass, a reasonable person could not conclude on the basis of the record before us that the defendants thrusted or forced in or upon

the plaintiff's property to constitute an intentional intrusion. Nor could a reasonable person find that the defendants' presence on the property, coupled with statements made to the plaintiff accusing him of stealing water, was the type of substantial interference the Restatement contemplates as necessary to constitute an intentional intrusion.[15]

Even if the plaintiff could demonstrate that the record was sufficient to create a question of material fact with respect to the first element, he is unable to do so with respect to the others. The second element requires that the intentional intrusion be upon the plaintiff's solitude or seclusion or private affairs or concerns. The plaintiff therefore must show that he had an objectively reasonable expectation of seclusion or solitude in that place. See *Shulman* v. *Group W Productions, Inc.*, 18 Cal. 4th 200, 232, 955 P.2d 469 (1998). "The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home." 3 Restatement (Second), supra, § 652B, comment (b). Viewed in the light most favorable to the plaintiff, the submissions before the court do not support a finding that the driveway area where the defendants parked their vehicles, the area where they walked to discover and service the hydrant, or the open canopy tent located approximately ten feet from the hydrant where they found the cap, were private areas in which the plaintiff had secluded himself. At no point does the plaintiff indicate that the defendants entered his residence or that they compromised any private information or the general privacy of the plaintiff. Accordingly, the conduct the plaintiff attributes to the defendants cannot, as a matter of law, sustain the second element.

As to the third and final element of the tort, it requires that the intentional intrusion upon a plaintiff's solitude or seclusion be highly offensive to a reasonable person. As we noted previously, there is "no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Id., comment (d). Viewing the evidence in the light most favorable to the plaintiff, no reasonable person could conclude that the conduct the plaintiff attributed to the defendants was highly offensive. The submissions demonstrate that the defendants, a water company and its employees, were servicing a hydrant the company had maintained for many decades. Although they walked around the plaintiff's property to discover the hydrant, searched in the area of the hydrant for the missing and altered cap, and allegedly accused the plaintiff of stealing water, a reasonable person would not find this conduct to be highly offensive.

On the basis of the foregoing, we conclude that the trial court did not commit error in rendering summary judgment in favor of the defendants on the invasion of privacy claims.

IV

The plaintiff next claims that the court incorrectly granted the motion for summary judgment in favor of the defendants as to his intentional infliction of emotional distress claims (counts nine through twelve). The plaintiff argues that "[w]hile the events that occurred on July 11, 2011, may not be extreme and outrageous in and of themselves, the continued cooperation of the [defendants] with an unfounded criminal investigation along with the events on July 11, 2011, seem to rise to the standard of extreme and outrageous." The plaintiff's argument is without merit, and, therefore, we affirm the judgment as to these counts.

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). Only where reasonable minds could disagree does it become an issue for the jury. Id.

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Id., 211.

In the present case, the materials submitted to the court in support of the defendants' motion for summary judgment reflect that once Lathlean and Lavin located

the hydrant they were on the property to service, they found that it was missing a cap and was leaking, and that the ground was wet around it. Additionally, they traced a red hose that was on the ground near the hydrant to a pond on the property. Lathean and Lavin searched for the cap in the vicinity of the hydrant, where they discovered it next to a wrench under a canopy tent. In viewing all the documents submitted to the court in the manner most favorable to the plaintiff, and assuming that each of the defendants accused the plaintiff of stealing water in a "rude" and "aggressive" manner, this conduct does not come close to extreme and outrageous conduct. See id. (occurrences may have been distressing and hurtful to plaintiff, but do not constitute extreme and outrageous conduct).

On appeal, the plaintiff concedes that "the events that occurred on July 11, 2011, may not be extreme and outrageous," but argues "that the continued cooperation of the [defendants] with an unfounded criminal investigation along with the events on July 11, 2011, seem to rise to the standard of extreme and outrageous." He did not, however, make this argument in his objection to the defendants' motion for summary judgment. Even if we were to construe these facts in the plaintiff's favor and consider this argument as a ground against rendering summary judgment, the defendants' mere cooperation with a criminal investigation that the state pursued does not constitute conduct that is so atrocious as to exceed all bounds usually tolerated by a decent society. See, e.g., *Tracy* v. *New Milford Public Schools*, 101 Conn. App. 560, 567–70, 922 A.2d 280 (conduct not outrageous where plaintiff's supervisor conspired with superintendent in pattern of harassment including denial of position, initiating disciplinary actions without proper investigation, defamation of character and intimidation), cert. denied, 284 Conn. 910, 931 A.2d 935 (2007). Accordingly, the defendants' conduct is insufficient to form the basis of an action for intentional infliction of emotional distress, and, thus, the trial court properly granted the motion for summary judgment as to counts nine through twelve.

V

In the plaintiff's final claim, he argues that the court improperly granted the motion for summary judgment in favor of Aquarion as to his CUTPA claim (count seventeen). He argues that he suffered an ascertainable loss and that "the collective acts of [the defendants] raise a sufficient question of material fact such that it could be found that [Aquarion] engaged in tortious conduct and, therefore, also violated the first criteria of the cigarette rule."[16] We disagree.

General Statutes § 42-110g (a) provides in relevant part: "Any person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by

section 42-110b, may bring an action . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." "The ascertainable loss requirement is a threshold barrier [that] limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." (Internal quotation marks omitted.) *National Waste Associates, LLC* v. *Scharf*, 183 Conn. App. 734, 750–51, 194 A.3d 1 (2018).

It is well settled that our Supreme Court has adopted the criteria set out in the so-called cigarette rule by the Federal Trade Commission for determining when a practice is unfair: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 409–10, 78 A.3d 76 (2013).

In his complaint, the plaintiff alleged that the "conduct of [Aquarion] by and through its . . . employees constitutes a violation of [CUTPA] including its aforesaid conduct to cover the wrongful conduct of its employees by taking and approving unwarranted destructive action against the plaintiff; was unfair and abuse of the law and the authority of a public utility, immoral, unethical, oppressive, and unscrupulous conduct which caused substantial injury to the plaintiff, one of its customers. Such acts include claiming it had an easement and had only remained on that easement when in fact none existed or it significantly trespassed in an area where it should not have been, without permission and over strenuous objection as aforesaid."

In the defendants' memorandum of law in support of their motion for summary judgment, they argued, inter alia, that the plaintiff did not suffer any ascertain-

able loss. They argued that when they served him with a second interrogatory in order for him to identify and describe the damages he sustained as a result of the defendants' alleged violation of CUTPA, he responded, "punitive damages and attorney's fees as authorized by CUTPA to be set by the court for violations." On the basis of this response, the defendants argued that he identified no actual damages as a result of Aquarion's purported CUTPA violation. In the plaintiff's objection to the motion, he asserted broadly that he suffered a loss of "his liberty, being arrested, falsely accused of committing crimes upon his property, injured during the arrest and suffering physical, emotional and mental damages . . . as well as financial loses." However, he provided no affidavits or other relevant documentary evidence to demonstrate any loss. The court concluded that the plaintiff failed to establish any ascertainable loss.

On appeal, the plaintiff argues that he clearly stated during the discovery process "that a portion of the damages that he sustained are both 'punitive damages and attorney's fees.' " He then concludes that "the ascertainable loss [he] suffered . . . [is] both the emotional harm and the incurred attorney's fees that stem from the tortious conduct of the defendants."

Here, although the plaintiff suggests that "punitive damages and attorney's fees" are sufficient to fulfill the ascertainable loss requirement under CUTPA, he has provided no authority for this contention. Punitive damages and attorney's fees are remedies under CUTPA. See *Freeman* v. *A Better Way Wholesale Autos, Inc.*, 174 Conn. App. 649, 668, 166 A.3d 857 ("A court may exercise its discretion to award punitive damages to a party who has suffered any ascertainable loss pursuant to CUTPA. . . . Accordingly, when the trial court finds that the defendant has acted recklessly, [a]warding punitive damages and attorney's fees under CUTPA is discretionary . . . ." [Citation omitted; internal quotation marks omitted.]), cert. denied, 327 Conn. 927, 171 A.3d 60 (2017). As our Supreme Court has made clear, "[t]he ascertainable loss requirement . . . is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." (Internal quotation marks omitted.) *Marinos* v. *Poirot*, 308 Conn. 706, 713, 66 A.3d 860 (2013). Thus, punitive damages and attorney's fees, which are potential remedies available to a plaintiff once he meets this threshold barrier and prevails on his CUTPA claim, cannot be the basis of demonstrating ascertainable loss. To hold otherwise essentially would eliminate the ascertainable loss requirement.

As to the plaintiff's contention that his emotional harm can fulfill the ascertainable loss requirement, we have explicitly held that a "claim of emotional distress does not constitute an ascertainable loss of money or

property for purposes of CUTPA." *Di Teresi* v. *Stamford Health System, Inc.*, 149 Conn. App. 502, 512, 88 A.3d 1280 (2014). We need go no further. For the reasons set forth previously, we agree with the trial court that the plaintiff failed to allege and demonstrate an ascertainable loss, and, accordingly, it properly rendered summary judgment as to count seventeen.[17]

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's sixth revised complaint also named as defendants Glynn McGlynn, a Stratford police officer; Patrick Ridenhour, the Stratford chief of police; and the Stratford Police Department (counts eighteen through twenty-five). Those defendants are not the subject of this appeal. Accordingly, any references in this opinion to the defendants refer solely to Aquarion, and its employees, Doyle, Lathlean, and Lavin.

[2] The plaintiff alleged that Lathlean was on a cell phone speaking with the Stratford Police Department and was recorded saying, "I just kind of need just a little bit of support that's all, nothing really more than that just the presence." The plaintiff indicated that he called the police "asking for an officer to be sent to have the trespass and its sequelae abated."

[3] Counts eighteen through twenty-five contained various claims against McGlynn, Stratford Police Chief Patrick Ridenhour, and the Stratford Police Department. As previously noted, those defendants are not the subject of this appeal. See footnote 1 of this opinion.

[4] We note that prior to filing their answer and special defenses, the defendants moved to strike counts five through seventeen of the plaintiff's revised complaint dated January 21, 2015. The plaintiff filed an objection and memorandum of law in opposition to the motion to strike on May 4, 2015. On October 22, 2015, the court, *Arnold, J.*, granted the motion to strike on counts five through seventeen. Although previously stricken, similar allegations were then amended or inserted in a newly revised complaint.

[5] After the defendants filed their answer and special defenses, they filed a subsequent motion requesting leave to amend their special defenses for the purpose of adding a new special defense asserting that to the extent the defendants' presence on the plaintiff's property was not authorized by Aquarion's express easement, Aquarion acquired a prescriptive easement for those activities as a result of its fifteen years of prior uninterrupted activities on the plaintiff's property. The court granted the defendants' motion on August 16, 2016.

[6] In the defendants' motion for summary judgment, they argued specifically that they "had a tariff from the Department of Public Utility Control" but indicated that that entity is now known as the Public Utility Regulatory Authority (PURA).

[7] Those exhibits include, among others, affidavits from Doyle, Lathlean, Lavin, and Lucy A. Teixeira, the vice president of administration for Aquarion; chain of title for the plaintiff's property; transcripts from the depositions of the plaintiff and his wife, Barbara Parnoff; the Stratford police incident report; site photographs taken on July 11, 2011, by Lavin and Doyle; excerpts of the plaintiff's answers to Aquarion's interrogatories; hydrant maintenance records; and the PURA approval, dated November 3, 2010.

[8] In the defendants' memorandum of law, they indicated and provided exhibits that demonstrate that after Lathlean and Lavin discovered the tampering, Lathlean called Doyle, whose functions at Aquarion include dealing with incidents of tampering and threats to the water system. After Doyle arrived at the property and was shown the hydrant and the hoses, she also reached the same conclusion that "the modified cap, nearby hose and open hydrant was indicia of tampering and posed a system contamination hazard." The defendants understood that they needed to remain on the property until the issue was resolved.

[9] In the defendants' memorandum of law in support of their motion for summary judgment, they argued that they had an easement and also that the "tariff approved by the Connecticut Public Utility Regulatory Authority authorized access to [the plaintiff's] property." As to the second ground for granting the motion for summary judgment, the court stated: "Even in the absence of the express easement by deed, entry by Aquarion . . . employees is permitted by the Department of Public Utilit[y] Control (DPUC). The evidence reveals that the employees were merely doing their jobs on July

11, 2011, and were at all times acting within the confines of the law and applicable regulations. None of the employees was acquainted with the plaintiff . . . prior to July 11, 2011, and none entered the property with any improper motive."

PURA is statutorily charged with regulating Connecticut's investor owned water companies, including Aquarion. See General Statutes § 16-6b. As such, its regulations require water companies to submit certain documents and information for its approval, including, inter alia, "(1) A copy of the company's tariff, which shall include but not be limited to: (A) A copy of each schedule of rates for service, together with the applicable riders; (B) A copy of the company's rules, or terms and conditions, describing the company's policies and practices in rendering service. These rules shall include: (I) A list of items which the company normally furnishes, owns and maintains on the customer's premises; (II) The utility's extension plan or plans as required in section 16-11-61 . . . ." Regs. Conn. State Agencies § 16-11-53

[10] The court's decision on April 10, 2017, became an appealable final judgment because it disposed of the remaining causes of action in the complaint against the defendants. See Practice Book § 61-3.

[11] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[12] On appeal, the plaintiff argues that "[s]ufficient questions of material fact toll the statute of limitations in . . . § 52-584 as to [the plaintiff's] negligent infliction of emotional distress claims"; however, this argument is relevant only to summary judgment as to Lathlean, Lavin, and Aquarion (counts six through eight). Because the court granted the motion for summary judgment in favor of Doyle on a different ground not addressed in the plaintiff's appellate brief, we construe his appeal to challenge summary judgment as to only Lathlean, Lavin, and Aquarion.

[13] See also E. Meltz, "No Harm, No Foul? 'Attempted' Invasion of Privacy and the Tort of Intrusion Upon Seclusion," 83 Fordham L. Rev. 3431, 3440 (2015) (explaining that thirty-six states "recognize intrusion upon seclusion under common law and follow the Restatement's formulation, either explicitly adopting it or closely mirroring the Restatement's definition and description of the cause of action").

[14] For example, illustration (1) provides: "A, a woman, is sick in a hospital with a rare disease that arouses public curiosity. B, a newspaper reporter, calls her on the telephone and asks for an interview, but she refuses to see him. B then goes to the hospital, enters A's room and over her objection takes her photograph. B has invaded A's privacy." 3 Restatement (Second), supra, § 652B, comment (b), illustration (1).

[15] The plaintiff argues that the defendants also subjected his family to "offensive verbal comments" to support his claim. As the defendants properly note in their appellate brief, however, the plaintiff cannot assert alleged offenses to family members as a basis for his own claims.

[16] Our Supreme Court first used the term "cigarette rule" in *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 473 A.2d 1185 (1984), to refer to the criteria used to determine what may constitute an unfair or deceptive act or practice under CUTPA. Id., 568, citing *Conaway* v. *Prestia*, 191 Conn. 484, 492, 464 A.2d 847 (1983). The term is derived from a Federal Trade Commission regulation that first set forth the criteria. See *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, supra, 566 n.10, citing Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed. Reg. 8324, 8355 (1964); see also *Federal Trade Commission* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5, 92 S. Ct. 898, 905, 31 L. Ed. 2d 170 (1972).

[17] We need not reach the issue of whether there was a genuine issue of material fact as to whether the defendants' conduct constituted an unfair or deceptive practice because we have determined that the plaintiff failed to allege and demonstrate an ascertainable loss.