******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

ALYSSA PETERSON *v.* CITY OF
TORRINGTON ET AL.
(AC 41966)

DiPentima, C. J., and Elgo and Sullivan, Js.

*Syllabus*

The plaintiff sought, inter alia, a declaratory judgment as to a tax sale of
real property, and for other relief. Pursuant to the system to collect
taxes unique to the defendant city of Torrington, the defendant R, the
tax collector for the city, conducted a tax sale in which he sold certain
real property of the plaintiff to collect unpaid property taxes. In response,
the plaintiff commenced an action against the city, R, and the defendants
W and S, the purchasers of the property at the tax sale. The trial court
granted the motion to intervene as a party defendant filed by H Co., a
lender that held a mortgage on the property. H Co. sought, inter alia, a
declaratory judgment as to the title to the real property, and for other
relief. Subsequently, the trial court granted the motions for summary
judgment filed by the city, R, and W and S, and rendered judgment
thereon, from which H Co. appealed to this court. *Held* that H. Co.'s
appeal was moot because there was an unchallenged, alternative ground
for affirming the judgment of the trial court; accordingly, because this
court could not grant H Co. any practical relief with respect to its claims,
this court was without subject matter jurisdiction over H Co.'s appeal.

Argued November 12, 2019—officially released February 25, 2020

*Procedural History*

Action seeking, inter alia, a declaratory judgment as
to a tax sale of certain of the plaintiff's real property,
and for other relief, brought to the Superior Court in
the judicial district of Litchfield, where the court, *J.
Moore, J.*, granted the motion to intervene as a party
defendant filed by Homeowners Finance Co.; there-
after, the intervening defendant filed a cross complaint
for, inter alia, a declaratory judgment seeking to quiet
title to certain real property, and for other relief; subse-
quently, the court, *J. Moore, J.*, granted the motions for
summary judgment filed by the named defendant et
al., and rendered judgment thereon, from which the
intervening defendant appealed to this court. *Appeal
dismissed.*

*Matthew S. Carlone*, for the appellant (intervening
defendant).

*James C. Graham*, for the appellee (defendant
Robert Crovo).

*Opinion*

SULLIVAN, J. This appeal arises out of a system to collect and pay property taxes unique to the defendant city of Torrington (city). See 21 Spec. Acts 7, No. 4 (1931). Pursuant to the system, the defendant tax collector, Robert Crovo (tax collector), conducted a tax sale in which he sold the real property of the plaintiff, Alyssa Peterson, to collect unpaid property taxes. In response, Peterson commenced an action against the city, the tax collector, and the purchasers of the property at the sale, the defendants William Gilson and Sharon Gilson (purchasers). Subsequently, Homeowners Finance Company (lender), the first mortgage holder on the plaintiff's property, intervened as a defendant, in an attempt to void the sale of the property.[1] All six parties filed motions for summary judgment. Ultimately, the trial court, after concluding that there was no genuine issue as to any material fact, granted summary judgment in favor of the defendants and denied summary judgment as to Peterson and the lender. Peterson and the lender filed separate appeals.[2] We dismiss the lender's appeal.

The trial court's memorandum of decision sets forth the following facts, which are necessary to the resolution of this appeal. Since at least the late 1800s, the city has maintained a private system of property tax collection. In the 1920s, the legislature first authorized the city's use of a private tax collector. See 19 Spec. Acts 479, No. 374, §§ 50 through 52 (1923). Under this system, the city enters into a contract with an individual who is authorized to collect city taxes.[3] Pursuant to contract, Crovo was the city's tax collector from 1999 until May 31, 2015. At the time Crovo's contract was terminated, the city's 2013 grand list[4] was subject to the terms of Crovo's contract.

Under this system, the city issues property tax assessments of personal and real property, and establishes the tax rate. The tax collector then collects the payments for property taxes and deposits them with the city's treasurer. The tax collector then personally pays, in a lump sum, any balance of property taxes that remains unpaid to the city. In exchange, the tax collector is authorized to continue to collect and personally retain the outstanding property taxes, as well as interest and fees due thereon. He additionally receives a commission on the total amount of property taxes collected. This system guarantees that the city collects 100 percent of the assessed property taxes in the year in which they are due.

Prior to the property tax sale at issue, Peterson owed substantial property taxes running through the 2013 grand list. The tax collector, therefore, made a demand for payment of the property taxes. Peterson did not make payment in response to the demand. The tax

collector, therefore, issued an alias tax warrant[5] for collection of the property taxes due.

To effect collection of the unpaid taxes on the real property, the tax collector scheduled a tax sale and the real property was subsequently sold. Although proper notice of the redemption period was provided to Peterson and the lender, neither exercised their right of redemption within the statutory six month period. Peterson, however, filed the present action and sought and received an ex parte restraining order that restrained the recording of the tax sale deed. After a hearing, the restraining order was dissolved. The tax collector then recorded the deed in the city's land records.

Peterson commenced the present action against the city, the tax collector, and the purchasers. The operative complaint alleged, inter alia, that (1) the temporary restraining order prevented the tax collector from taking actions so as to render the tax sale void, and (2) the tax sale was voidable and the deed was invalid under General Statutes §§ 12-157[6] and 12-159.[7] The lender intervened, and in its cross complaint, alleged, inter alia, that (1) the tax collector's deed did not convey title to the purchasers, (2) Peterson is the owner of record of the property, and (3) the lender's mortgage remains an enforceable lien on the property.

After its review of the facts before it, the trial court granted the motions for summary judgment filed by the tax collector, the city, and the purchasers, and denied the motions for summary judgment filed by Peterson and the lender. This appeal followed.

On appeal, the lender claims that the trial court improperly granted summary judgment in favor of the tax collector, the city, and the purchasers because (1) the tax collector failed to comply with § 12-157 (c) and, (2) the tax collector's deed transferring interest in the property to the purchasers did not convey title, and, thus, conveyed no interest in the property. The tax collector argues that, because the lender failed to challenge all of the independent grounds for the trial court's adverse ruling, specifically the trial court's decision that § 12-159 independently validated the tax collector's sale, its appeal is moot. We agree with the tax collector that this court lacks subject matter jurisdiction. Accordingly, we dismiss the appeal.

We first set forth the legal principles that guide our disposition of this matter. Our review of a trial court's decision granting a motion for summary judgment is well established. Practice Book § 17-49 provides that the "judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A material fact is a fact that will

make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . .

"The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Parnoff* v. *Aquarion Water Co. of Connecticut*, 188 Conn. App. 153, 164–65, 204 A.3d 717 (2019).

First, we must decide if the lender's claims are moot. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) *that the determination of the controversy will result in practical relief to the complainant.* . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; emphasis altered; internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 555–56, 979 A.2d 469 (2009). "Where an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citation omitted; internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017).

In its appellate brief, the lender does not challenge the trial court's decision that, irrespective of any purported

noncompliance with § 12-157, the tax collector's sale of the real property to the purchasers was independently validated by § 12-159.[8] Instead, its argument is limited to (1) an alleged noncompliance with § 12-157 (c), and (2) a claim that the tax collector's deed transferring interest in the property to the purchasers did not convey title because (a) the grantor was improperly identified in the deed and (b) the tax collector did not strictly comply with General Statutes (Rev. to 2015) § 12-158. Our review of the record reveals that the trial court granted the motions for summary judgment in favor of the tax collector, the city, and the purchasers on two independent grounds. First, the trial court determined that there was no genuine issue of material fact that the tax collector substantially complied with § 12-157. Second, the trial court determined that "under § 12-159, the proffered tax collector's deed serves as prima facie evidence that the tax sale was valid and entirely effective to pass unencumbered title to the [purchasers]."

We need not reach the merits of the lender's claims because we conclude that the claims are moot. "[W]here alternative grounds found by the reviewing court and unchallenged on appeal would support the trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the [lender]." *Green* v. *Yankee Gas Corp.*, 120 Conn. App. 804, 805, 993 A.2d 982 (2010). Thus, even if we were to agree with the lender that the tax collector did not comply with § 12-157, which we do not, there is an unchallenged, alternative ground for affirming the judgment of the trial court, namely § 12-159. Accordingly, because we cannot grant the lender any practical relief with respect to the claims it raised, we are without subject matter jurisdiction over its appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] On appeal, the city and the purchasers have adopted the brief of the tax collector.

[2] Peterson's appeal was dismissed after she failed to timely file a brief and appendix. She, therefore, is not a party to this appeal.

[3] "[T]he board of finance and the board of councilmen shall meet in a joint session and shall choose for the position of tax collector . . . . The person so chosen as tax collector shall hold office for a period of four years . . . . Said tax collector shall make and file for record in the land records of the town of Torrington tax liens for all unpaid taxes, as provided by the general statutes, within one year from the date such taxes shall become due and payable." 21 Spec. Acts 7, No. 4, § 4 (1931); 20 Spec. Acts 280, No. 253, § 2 (1927); 22 Spec. Acts 8, No. 5 (1935); 24 Spec. Acts 88, No. 134, § 5 (1943).

[4] The grand list is a listing of the assessed values of all property located within the city. See General Statutes § 12-55 (a).

[5] An alias tax warrant may be issued by the tax collector after a demand for such taxes has already been made, to collect unpaid taxes. See General Statutes § 12-162 (b) (1). Section 12-162 (a) provides the tax collector, in the execution of tax warrants, with the same authority a state marshal has in executing the duties of office, and he may serve warrants for the collection of unpaid taxes.

[6] General Statutes § 12-157 (c), which guides the sale of real estate for

delinquent taxes, provides: "At the time and place stated in such notices, or, if such sale is adjourned, at the time and place specified at the time of adjournment as aforesaid, such collector (1) may sell at public auction to the highest bidder all of said real property, to pay the taxes with the interest, fees and other charges allowed by law, including, but not limited to, those charges set forth in section 12-140, or (2) may sell all of said real property to his municipality if there has been no bidder or the amount bid is insufficient to pay the amount due."

[7] General Statutes § 12-159 provides in relevant part: "Any deed, or the certified copy of the record of any deed, purporting to be executed by a tax collector and similar, or in substance similar, to the above, shall be prima facie evidence of a valid title in the grantee to the premises therein purported to be conveyed, encumbered only by the lien of taxes to the municipality which were not yet due and payable on the date notice of levy was first made, easements and similar interests appurtenant to other properties not thereby conveyed, and other interests described therein and of the existence and regularity of all votes and acts necessary to the validity of the tax therein referred to, as the same was assessed, and of the levy and sale therefor . . . . No act done or omitted relative to the assessment or collection of a tax, including everything connected therewith, after the vote of the community laying the same, up to and including the final collection thereof or sale of property therefor, shall in any way affect or impair the validity of such tax as assessed, collected or sought to be collected or the validity of such sale, unless the person seeking to enjoin or contesting the validity of such sale shows that the collector neglected to provide notice pursuant to section 12-157, to such person or to the predecessors of such person in title, and who had a right to notice of such sale, and that the person or they in fact did not know of such sale within six months after it was made, and provided such property was by law liable to be sold to satisfy such tax. . . ."

[8] The lender made only an isolated reference to § 12-159 in a footnote in its brief. Moreover, during oral argument, counsel for the lender admitted that he did not brief § 12-159 because he fundamentally rejected the argument and premise that § 12-159 "even comes into play" with this issue on appeal.

————————————————————